## The George F. Blake Mfg. Co. v. The Sanitary District of Chicago.

1. CONSTRUCTION OF STATUTES—*Sec. 11, Relating to the Letting of Contracts.*—Sec. 11, of the act to create sanitary districts, etc. (Hurd's Statutes 1898, page 322, Sec. 353), providing that all contracts for work to be done by such municipality, the expense of which will exceed $500, shall be let to the lowest responsible bidder, has no application to a hiring by the Sanitary District of Chicago of pumps and employes to be used by its chief engineer in the doing of work which it had directed the engineer to do.

2. MUNICIPAL CORPORATIONS—*Expending Money in Excess of Appropriations.*—A person employed by the proper officer of a municipal corporation, and who, under such employment, does work for the corporation, can not be held responsible because the officer employing him expended money in doing such work, in excess of the amount authorized.

3. SAME—*Estoppel by its Officers.*—A municipal corporation may be estopped by the acts of its officers.

Assumpsit, for services, etc. Trial in the Superior Court of Cook County; the Hon. THEODORE BRENTANO, Judge, presiding. Jury waived and cause submitted to the court. Finding and judgment for defendant. Appeal by plaintiff. Heard in this court at the October term, 1897. Reversed and judgment entered for plaintiff in this court.

DUPEE, JUDAH, WILLARD & WOLFE, attorneys for appellant.

288    APPELLATE COURTS OF ILLINOIS.

VOL. 77.]  George F. Blake Mfg. Co. v. Sanitary Dist. of Chicago.

The unauthorized acts of municipal officers are regarded as the acts of the corporation, provided the acts are performed by that branch of the municipal government which is vested with jurisdiction to act for the corporation upon the subject to which the particular act relates.   Thayer v. City of Boston, 19 Pick. 511;  Buffalo and Hamburgh Turnpike Co. v. City of Buffalo, 58 N. Y. 639;  Chicago v. McGraw, 75 Ill. 570;  Dillon on Municipal Corp., Sec. 764.

F. W. C. HAYES and SEYMOUR JONES, attorneys for appellee.

Any positive acts by municipal officers which may have induced the action of the adverse party, and where it would be inequitable to permit the corporation to stultify itself by retracting what its officers had done, will work an estoppel. Roby v. The City of Chicago, 64 Ill. 447;  Chicago, Rock Island and Pacific Railroad Co. v. City of Joliet, 79 Id. 39; Logan County v. City of Lincoln, 81 Id. 156.

MR. PRESIDING JUSTICE ADAMS delivered the opinion of the court.

Appellant sued appellee in assumpsit.   The declaration contains the common counts.   Appellee pleaded the general issue.   The cause was tried by the court, without a jury, by agreement of the parties.   The court found the issues for the appellee and judgment was rendered accordingly. The facts are substantially as follows:

The chief engineer of appellee reported to appellee as follows:

"CHICAGO, August 30, 1893.

To THE HONORABLE, THE BOARD OF TRUSTEES OF THE SANITARY DISTRICT OF CHICAGO:

GENTLEMEN: In the matter of experimentation upon the difficult material on the McArthur Brothers' sections, I would recommend that a test of the erosive power of pumps working under high pressure be made upon this material. If it can be removed by hydraulic erosion, as I believe it can, it will make an economical method of handling the

material.   I have made some investigation of the expense which would be attendant upon the experiments.   We should have to hire two high-power pumps and purchase several hundred feet of pipe, and hire two tugs for steaming purposes, which, together with the amounts for labor and the freight, foots up $1,000.   To make the estimate of cost liberal I have added $500 to this.   This is the proposition which was discussed before certain members of the board by Mr. Cutter, of the Chicago Hydraulic Dredge Company.   A successful test would have a marked effect on the question of letting this work at reasonable prices, and therefore I feel justified in making this recommendation.

Respectfully submitted,

  (Signed)                            Isham Randolph,
Chief Engineer."

On this report coming before appellee's board of trustees, the recommendations of the report were concurred in by the board, and the chief engineer was authorized and directed by the board to make the test as provided in the report, at an expense not to exceed $1,500.

September 4, 1893, appellant addressed to Benezette Williams, a civil and consulting engineer, who had charge of the proposed test under the direction and superintendence of Isham Randolph, the chief engineer, the following communication:

"Chicago, September 4, 1893.

Mr. Benezette Williams, C. E., 602 Security Building, Chicago.

Dear Sir:   This is to confirm proposition just made to you for the use of three (3) pumps and man to erect and run same, as follows:

We will furnish to you f. o. b. cars this city two (2), of our No. 10 or 16 x 10 x 16 single piston pumps and one (1) 16 x 10½ x 12 duplex piston pump, and furnish one man to superintend the setting up of these pumps, you to pay us for the use of these three pumps and the man's time $42.50 per day for each day pumps are away from this store; it

290    APPELLATE COURTS OF ILLINOIS.

VOL. 77.] George F. Blake Mfg. Co. v. Sanitary. Dist. of Chicago.

being understood that you are to put these pumps into just as good condition when through using them as they are when taken from the store. That is, if any repairs are necessary to put them into a salable condition, and if pumps need painting, you are to pay us just what it costs for doing this work.

These pumps with man to superintend erection of same we could furnish you immediately upon receipt of your order.                Yours very truly,

KNOWLES STEAM PUMP WORKS,

Robert W. Gray."

The Blake Manufacturing Company is a corporation, and did part of its business in the name of the Knowles Steam Pumping Works, which concern is not a corporation, and is owned by the Blake Manufacturing Company.

Appellant's communication appears to have been handed to Mr. Randolph, and was answered as follows:

"CHICAGO, September 7, 1893.

KNOWLES STEAM PUMP WORKS, 163 South Canal Street, City.

GENTLEMEN: Please deliver upon the order of Mr. Benezette Williams, three pumps in accordance with your proposition to him dated September 4th. Make bill against this district and submit to him for approval.

Yours respectfully,

ISHAM RANDOLPH,

Chief Engineer."

Inclosed to appellant with the last communication was the following:

"CHICAGO, September 8, 1893.

KNOWLES STEAM PUMP WORKS, 163 South Canal Street, City.

GENTLEMEN: In harmony with your proposition of September 4th, to furnish three (3) pumps for an experiment on the Sanitary District Channel, I send you an order from Mr. Isham Randolph, chief engineer of sanitary district, which explains itself. This you also consider an order from me to furnish said pumps in accordance with your proposition.                Very truly yours,

BENEZETTE WILLIAMS."

George F. Blake Mfg. Co. v. Sanitary Dist. of Chicago.

By the direction of Williams, appellant, September 9, 1893, delivered the three pumps on board the C. & A. R. R., consigned as directed by Williams. Appellee received the pumps. They were away from appellant's place of business twenty-eight days, and appellant also furnished a man to appellee, whose time with appellee was seventeen days. The charge per day for each pump was $12.50 or $37.50 per day for the three pumps, and the charge for the man was $5 per day, being $42.50 per day for man and pumps, as per appellant's proposition of September 7th, *supra*. After the pumps were returned, appellant, in accordance with the direction of Mr. Randolph in his communication to appellant of September 7th, *supra*, made out its bill and submitted it to Williams for his approval. The bill and approval thereof are as follows:

"CHICAGO, October 23, 1893.

SANITARY DISTRICT OF CHICAGO, Chicago.

Bought of KNOWLES STEAM PUMP WORKS,
163 South Canal St., Chicago.

| | |
|---|---:|
| To use of 3 pumps on Drainage Canal, 28 days at $37.50 per day | $1,050.00 |
| C. H. Soper's services, running same 17 days at $5 per day | 85.00 |
| Frt. on pumps and piping fr. sag. bridge | 16.00 |
| Ctg. "  "  to store when returned | 12.00 |
| 1 No. 10 F. C. valve seat compl. to replace broken one | $5.00 |
| Express on same | 75 |
| Expense delivering piping, hose and fittings, teamster's bill | 8.00 |
| Labor bill | 4.00 |
| Packing bought for pumps | 1.80 |
| Expense putting pumps in order and painting at store | 18.00 |
| | $1,200.55 |

Correct as per proposition of September 4th.
May 18, 1894.

BENEZETTE WILLIAMS."

292    APPELLATE COURTS OF ILLINOIS.

VOL. 77.] George F. Blake Mfg. Co. v. Sanitary Dist. of Chicago.

It was proved that the bill was correct. Defense to the claim of appellant was made on two grounds: first, that the contract between the parties'was void because not let to the lowest bidder; and, secondly, because appellee expended, in making the test, about $1,496.30 in excess of the amount of appellant's bill.

The first objection is based on section 11 of the sanitary district law, the part of which relied on in support of the objection is as follows:

"Section 11. All contracts for work to be done by such municipality, the expense of which will exceed $500, shall be let to the lowest responsible bidder therefor upon not less than sixty days' public notice of the terms and conditions upon which the contract is to be let having been given by publication in a newspaper of general circulation published in said district, and the said board shall have the power and authority to reject any and all bids and re-advertise," etc.    2 S. & C. Stat., 2d Ed., p. 1494.

The objection is untenable. No contract was let to appellant to do any work. Appellant's pumps and employe were merely hired by appellee to be used by its chief engineer in the doing of work which appellee directed the engineer to do. The statute has no application to such a hiring. In legal contemplation, appellee itself did the work of making the test. Appellee put in evidence bills showing that it had expended in making the test $1,496.30, exclusive of appellant's bill, but there is not a particle of evidence that, prior to contracting with appellant for its pumps and employe, it had expended a cent or made any binding contract for that purpose. It is not, and can not successfully be claimed that appellee had not the power to make the test, so that when the contract of hiring was made with appellant, it was a valid and binding contract. Appellee's board of trustees was authorized by section 4 of the statute to elect a chief engineer and to prescribe his duties. The chief engineer, Mr. Randolph, was directed to make the test in question. It is apparent from his report to the board that pumps were necessary with which to make it,

and it is also apparent that some one having sufficient knowledge to superintend the setting up and operation of the pumps was necessary.   Mr. Randolph, having lawful authority, hired from appellant the pumps and a man to superintend them, and kept the former twenty-eight days and the latter seventeen days, and now it is claimed that because appellee expended some $1,496 for other labor and material used in making the test, appellant's bill should not be paid.   Mr. Randolph, appellee's chief engineer, was appellee's executive officer in making the test, and the evidence shows that it was made under his superintendence and direction.   He kept the pumps and appellant's employe doubtless till the test was complete, and appellee has had the benefit of the pumps and the services of the employe. There is no evidence that appellant had any knowledge or notice that there was any limitation of expense in the order of the board of trustees directing the test, and even if appellant had had such knowledge, it could not have prevented the incurring by appellee of expense in excess of the limitation.   It appears from the evidence that the bills, exclusive of appellant's bill, amounting in all to $1,496.30, were paid by warrants, which must have been issued by the proper officer or officers of the board of trustees, after approval of the bills by the board.   The defense is wholly inequitable, and should not prevail unless there is some inexorable, unyielding rule of law to prevent a recovery by appellant. We are, happily, ignorant of any such rule.

Mr. Randolph was the agent and executive officer of appellee in making the test, and he having retained, for the purpose of the test, appellant's pumps and employe, and appellee having had the full benefit thereof, it is estopped to set up in defense of appellant's claim the want of power of its agent in the premises.   County of Cook v. Harms, 108 Ill. 151, 164, and cases cited.

In Chicago v. C. & W. Ind. R. R. Co., 105 Ill. 72, the city claimed that certain acts of the mayor and police, on which the railroad company relied, were unauthorized, and therefore not binding on the city, but the court say :   "We

294    APPELLATE COURTS OF ILLINOIS.

VOL. 77.] George F. Blake Mfg. Co. v. Sanitary Dist. of Chicago.

recognize the doctrine to be that the unauthorized acts of municipal officers are regarded as the acts of the corporation, provided the acts are performed by that branch of the municipal government which is vested with jurisdiction to act for the corporation upon the subject to which the matter relates.".

In Sexton v. Chicago, 115 Ill. 230, it appeared that a draughtsman in the office of the superintendent of buildings, who had charge of the plans of a building which the city was about to erect, and in regard to which it had advertised for bids, handed to Sexton, who was a contractor and desired to make estimates for the purpose of bidding on the work, a tracing which purported to be, but was not, a correct tracing of an original plan. Sexton made a contract with the city, and the work, as shown by the original plan, being more costly than that shown by the tracing on which he figured, a dispute arose between him and the city as to which he was bound by—the original or the incorrect tracing— and the court held that his contract only bound him to do the work by the tracing, saying : " The city owed the duty to have a competent person in charge of this office, and to see that he discharged his duty. His act in handing out plans and tracings was its act. There is nothing new in thus holding a municipality responsible for the want of fidelity of those who act for it. Such suits are of daily occurrence."

In City of Chicago v. Roth, 26 Ill. 456, Roth, a carpenter, sued the city for compensation for work done by him, under the direction of the street commissioner, in constructing street crossings. The city defended on the grounds that the appropriation was exhausted, and the street commissioner had been twice notified by the city comptroller, before Roth was employed, not to employ any more men. The court held that Roth was entitled to recover, saying : " The laborer was employed by the proper officer of the city, and under such employment did the work for the city, and if the agent of the city disobeyed the lawful orders of the city authorities to suspend the work on the streets, the offi-

cer and not the laborer is responsible for such disobedience," etc.

In Martel v. City of East St. Louis, 94 Ill. 67, the court say: "Any positive acts by municipal officers which may have induced the action of the adverse party, and when it would be inequitable to permit the corporation to stultify itself by retracting what its officers had done, will work an estoppel."

That a municipal corporation may be estopped by the acts of its officers is recognized in Logan County v. City of Lincoln, 81 Ill. 159; People ex rel. etc. v. Town of Anna, 67 Ib. 59; Hitchcock v. Galveston, 96 U. S. 351, and numerous other cases. In view of the authorities cited and the facts in evidence, the act of Mr. Randolph, appellee's chief engineer and agent, must be deemed to have been the act of appellee, and therefore appellee is liable as per its contract with appellant.

The judgment will be reversed, and the cause having been heard by the court without a jury, and there being no controversy as to the amount of appellant's bill, namely, $1,200.55, judgment will be entered here in favor of appellant and against appellee for that amount, and appellant's costs of this court.

Judgment reversed and judgment for appellant here.