WILLIAM F. LAING, APPELLANT, V: ELEASER D. EVANS ET AL., APPELLEES.

FILED APRIL 17, 1902. No. 11,372.

Commissioner's opinion, Department No. 1.

1. Estoppel. An estoppel by representations does not arise, where there is no intention and could be no reasonable expectation, that such representation was to be acted upon.

2. Lease: AGENCY: MARRIED WOMAN: ESTOPPEL: NOTARY: LOAN.

Making a lease as "authorized agent" for her husband by a married woman, in whose name title of record to the lands in question had stood for eight years, not such representation as estops her to claim title against the notary acknowledging the lease, who more than two years thereafter loaned money to the husband, supposing he owned the lands.

3. **Husband and Wife:** CREDITORS. Acts of a husband in leasing lands and taking notes to himself for rent, where the title of record remained all the time in the wife, do not show such ostensible ownership in him as to preclude her from claiming title against his creditors.

4. ———: ———: ESTOPPEL. A wife, who in 1881 procured her husband to buy from the state school land for her in his own name, who leaves the contract in his name until 1896, when the state is paid from proceeds of sale of part of the land, and deed made to her, and who has in the meantime permitted the husband to lease the land, take notes for rent in his own name, and manage it as his own, is estopped to claim, as against a creditor who has, with knowledge of such management, but with no actual knowledge of the contract, loaned the husband money in 1894 on the faith of his ownership of the land.

APPEAL from the district court for Douglas county. Heard below before FAWCETT, J. *Affirmed in part.*

*Howard B. Smith,* for appellant.

*F. L. Sumpter, Wilson & Brown* and *Crane & Crane, contra.*

HASTINGS, C.

May 22, 1897, William F. Laing, plaintiff, commenced an action in Douglas county to subject 22½ acres of the west half of the northwest quarter of section 16-16-10, to the payment of a judgment of the district court of Lancaster county recovered by plaintiff against defendant E. D. Evans, May 28, 1896, for $2,154.40, with interest and costs. It was also sought to subject to the same judgment the southwest quarter of said section 16, except 20.9 acres conveyed to L. D. Smith, and also the northwest quarter of the northwest quarter of section 21, township 16, range 10. The judgment above mentioned was rendered upon a promissory note dated July 23, 1895, which was itself a

renewal of one originally made June 29, 1894, and executed by the defendant Evans, together with four other parties, in consideration of a loan. The southwest quarter of section 16 was acquired by purchase from the state in June, 1871. It was originally purchased in the name of E. D. Evans. In 1883 a deed of this land by the state of Nebraska to Mrs. Evans was made and recorded. July 10, 1890, Mr. Evans and his wife deeded to one L. D. Smith 20.9 acres of this land. The remainder still stands in the name of Mrs. Evans. March 24, 1881, Mr. Evans bought in his own name from the state the west half of the northwest quarter of the same section. This contract remained in his name until January 13, 1896, when it was assigned by her husband to Mrs. Evans, and a deed of the land made by the state to her and recorded. June 19, 1884, one Williams conveyed to Mrs. Evans, by deed then recorded, the northwest quarter of the northwest quarter of section 21, township 16, range 10. This is alleged to have been purchased and paid for by E. D. Evans and a conveyance made to Mrs. Evans for the purpose of defrauding his creditors. The claim of plaintiff is that all of this land was the property of E. D. Evans, and the ownership of the wife colorable merely, and held for his benefit. It is also claimed that by her holding her husband out as the owner, and by leaving him in control of the property, and by acquiescing in his claim of ownership, the wife has estopped herself from claiming to own the land as against the plaintiff. The loan is alleged to have been made on the credit of the husband's ownership of all this land. The wife answered, denying the incurring of the indebtedness to plaintiff and the recovery of his judgment; admitted her relationship to E. D. Evans; denied that he was the owner of the contract with the state for the west half of the northwest quarter of section 16 on June 29, 1894, or afterwards, but claimed ownership herself; admitted the sale of 57½ acres of the land to Merriwether, and says that it was sold in good faith long before the incurring of any indebtedness to plaintiff. She de-

nies that any of the premises were paid for by E. D. Evans, but says the consideration was paid by herself. She says that the lands, from the time of their purchase from the state and from Williams until the removal of the family to Lincoln, in 1891, were not in her husband's possession, but in her own, except in so far as he lived with her upon them and assisted in working them, and that any control, renting, or collecting of the rents for the premises, exercised by him at any time, was as her agent. It is now conceded that E. D. Evans was one of the signers of the note executed June 29, 1894, to the plaintiff for $2,725, and that judgment was rendered upon a renewal of that note, as claimed by plaintiff, and execution returned "No property," and that the judgment remains unpaid. The questions arising in the case are as to the ownership of the three portions of land, and whether or not Elizabeth Evans is estopped from claiming title to them.

In 1885 E. D. Evans seems to have recovered a judgment in his own name for trespass and injury to timber on this land. After 1890 the leases of the land seem to have been generally made out by E. D. Evans in his own name. In 1892 Mrs. Evans seems to have executed a lease to Chas. Parson as the agent of E. D. Evans, and to have signed the lease in that way. The rents seem generally to have been paid to Mr. Evans, and the notes for the rent seem to have been generally drawn in his favor. From 1871 to 1891 the family lived on the premises and cultivated them together. The plaintiff testified that he drew up a lease to one Parson of this land in the name of E. D. Evans in 1892 at the request of Mrs. Evans, and it was drawn in that form by her instruction, and that her signature to the lease as agent of her husband was in his presence. The school land contracts of purchase were made in the name of E. D. Evans, but deeds to Elizabeth L. Evans, as stated. The intervening payments are stated by Mrs. Evans to have been usually made by her husband at her instance, and with her money derived from the farm. There is evidence of statements made by Mr. Evans that the lands

were put in Mrs. Evans's name because of some old judg-
ments growing out of an unfortunate mercantile venture
of his in 1870.  Plaintiff swears that he loaned the money
in the belief that E. D. Evans was the owner of the lands,
and on the faith of such ownership of the property, and
would not have loaned the money if he had not believed
that the lands belonged to E. D. Evans, and he also testi-
fies that his belief of such ownership grew in part out of
the instructions he had received from Mrs. Evans in mak-
ing the lease to Parson in 1892, as well as out of the in-
structions he had received from Mr. Evans, and his knowl-
edge of the control and management of the lands by him
from 1881 to 1896.  He had had no business relations with
Mrs. Evans except the making of the Parson lease.  He
testified also to a conversation with Mrs. Evans, in which
she said she knew of the intention of borrowing the money
for which the original note was given.  He also testified
that the money was borrowed for the use of the Bethany
Manufacturing Company.  Plaintiff was a money loaner,
and required the names of at least E. D. Evans and T. J.
Oliver to the note before he would loan the money.  De-
fendant Elizabeth Evans testified that when she was mar-
ried in 1860 she received from her father a mare and colt;
that five years later, when she removed with her husband
to a homestead in Douglas county, Nebraska, she took
some horses with her grown from this mare; that five years
later her husband traded the homestead and stock upon it
for a stock of goods in Elkhorn, Nebraska, and that in
1871, when that business was closed out, she received $300
for the horses; that with this the first payment was made on
the school land in 1871; that the family immediately re-
moved upon this land, and she obtained a pair of mules
from her father to work it, and subsequently received
$75 more from her father to pay the overdue interest to
the state.  She also testified that she paid the interest and
taxes and made the final payment, and had a deed taken
out to herself in 1883, and filed it of record; that she
bought and paid for the land conveyed to her by Williams

in 1884, the northwest quarter of the northwest quarter
of section 21; that she paid $200 down, and gave her note
for $400, and that the money for both payments came out
of her previously owned farm; the west half of the north-
west quarter of section 16, she testifies was purchased by
her husband for her and with her money; that she paid the
lessee, one Willis, $50 to surrender his lease. She also
testified that the final payment for the west half of the
northwest quarter of section 16 was made out of the pro-
ceeds of a sale of $57\frac{1}{2}$ acres of the same land to one Merri-
wether.

Plaintiff's case seems to rest upon the propositions that
the real ownership of the lands was in E. D. Evans, and
also that Mrs. Evans was estopped by her action in mak-
ing a lease of the land as her husband's agent to Parson,
and in leaving the control and management to her hus-
band, from asserting her ownership under the deeds to
her. So far as the question of estoppel is concerned it
seems clear that plaintiff neither alleges nor proves
enough to make out a case except, perhaps, as to the re-
maining $22\frac{1}{2}$ acres of the west half of the northwest quar-
ter of section 16-16-10 east. To create an estoppel by rep-
resentations some action upon them must be contemplated
by the parties, or must naturally be expected to be taken
by the person deceived. Such person also must have
taken reasonable precautions himself. No intention to
mislead plaintiff, or any one else having a right to know,
as to the ownership of these lands, appears. Plaintiff's
testimony as to admissions made by Mrs. Evans that she
knew beforehand of the borrowing of this money is met by
her positive denial of all such knowledge. Her statement
is corroborated by that of T. J. Oliver, and by the circum-
stances. It seems clear that nothing of the kind was in
contemplation in 1892 when the Parson lease was made.
A mere statement that her husband was the owner of the
land, made to one who was not expected nor intended to
take any action upon such statements, and made in the
face of the fact that her deeds were of record, can not be

held to prevent her claiming the lands. Neither does it seem that the finding of the trial court was wrong as to the actual ownership of the tract conveyed to Mrs. Evans by the state in 1883, nor of that embraced in the deed to her from Williams in 1884. She had at least a color of right in these lands and the placing of them in her name by recorded deeds must be held to outweigh, in determining their actual ownership, the part which her husband took in managing them.

The serious question arises as to the 22½ acres of the west half of the northwest quarter of section 16, which was not conveyed to Merriwether. Mrs. Evans testified that she was ill at the time of its purchase in 1881, and that she had her husband buy it for her; that about four years later she sold the 57½ acres north of the Rawhide to her son. The latter in 1891 sold this tract to Robert Merriwether for $1,500, and Merriwether, as a part of the consideration, paid her $300, and to the state the remainder of the purchase price of the entire 80 acres. This was done and deed obtained in 1896. At the time of this loan and its renewal the contract for the entire 80 acres stood in the name of E. D. Evans. Merriwether is not a party to the action, and does not testify. No complaint is made that his part in the transaction was not in good faith. The other 22½ acres, however, which are claimed by Mrs. Evans, it is insisted should be subjected to the payment of this note. Assuming, as we must, that the trial court believed the woman's statement that the husband purchased this land for her, and that the lower court was justified in accepting such statement, in connection with her son's, that he bought from her the 57½ acres which were subsequently conveyed to Merriwether, the question then presented is whether, after leaving this land in her husband's name during the years from 1881 to 1896, and after the plaintiff's loan had been made upon the credit of the husband's ownership, she can now be heard to deny such ownership. In *Roy v. McPherson,* 11 Nebr., 197, the wife in 1864 purchased lands through her brother

with funds from her father's estate, and title, contrary to her directions, was made to her husband. She, however, permitted it to remain so till 1878. It was held that her rights in the land were subject to that of her husband's creditors, who had in the meantime trusted him upon faith of his apparent ownership. The wife was presumed to have known that he would be likely to obtain credit by reason of his ostensible ownership. *McGovern v. Knox*, 21 Ohio St., 547, is cited to the same effect. To the same effect is *Besson v. Eveland*, 26 N. J. Eq., 468. In *Goldsmith v. Fuller*, 30 Nebr., 563, the doctrine is reasserted, though the case is held to fall outside the rule, because the proof did not clearly show either that the husband was permitted to deal with the property as his own, or that credit was extended on the faith of his ownership. In *Early v. Wilson*, 31 Nebr., 458, the same rule was held in a replevin suit to apply, and the wife was denied a recovery of her personal property where she had knowingly permitted her husband to act as ostensible owner and he had so obtained credit. In *Swartz v. McClelland*, 31 Nebr., 646, property on which the husband and wife lived, and which was bought with her money, was held subject to her husband's debts contracted while the title stood in his name. "Honesty and fair dealing require that where the wife permits her husband to use her money or property as his own, incur obligations upon the faith that the property belongs to him, that as against such creditors their rights are superior to hers." In *Brownell v. Stoddard*, 42 Nebr., 177, the same doctrine is reaffirmed, though the case is held to fail to show that credit was extended on the faith of the husband's apparent ownership. *Cleghorn v. Obernalte*, 53 Nebr., 687, is cited by defendant as a parallel case to the present one, but is distinguished by the fact that the court declares there is not a particle of testimony to show that credit was extended because of belief in the husband's ownership. The same is true of *Mosher v. Neff*, 33 Nebr., 770, and *Hews v. Kenney*, 43 Nebr., 815. In *Cleghorn v. Obernalte*, it is true that the

court adds, as a further distinction, that when the debt was contracted the land was held under a contract, and the legal title was in the vendor. Such was the case here also, but in this case there were numerous acts of ownership in addition to the fact that the contract with the state was in the husband's name. It does not seem that the acts of ownership were sufficient to overcome the presumptive notice from the records of the deeds to Mrs. Evans. They do, however, appear to fully justify the belief that the 22½ acres were actually the property of Mr. Evans. It is true that plaintiff had no actual knowledge, so far as appears, as to this contract with the state, but it does not seem that he should be held chargeable with laches for not making an investigation which would only have confirmed his error as to the ownership. It is concluded therefore that the action of the trial court in refusing to disturb the deeds of 1883 and 1884 should be affirmed, but that as to the 22½ acres in the west half of the northwest quarter of section ·16-16-10 east, not conveyed to Merriwether, the decree should be reversed and the cause remanded, with directions to enter a decree for the sale of that 22½ acres, the proceeds to be applied upon plaintiff's judgment.

DAY and KIRKPATRICK, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, it is ordered that the findings and decree of the trial court, so far as the same relate to the southwest quarter of section 16-16-10 east and to the northwest quarter of the northwest quarter of section 21-16-10 east be affirmed, and so far as they relate to the west half of the northwest quarter of said section 16, that said findings and decree be reversed, and that said cause be remanded to the district court of Douglas county, with instructions to enter a decree for plaintiff as prayed as to the 22½ acres of said last-named premises not conveyed to Robert Merriwether.

JUDGMENT ACCORDINGLY.