The McCormick Harvesting Machine Co., Appellant, v. Mary E. Perkins et al.

**Evidence: admissions.** The admissions of a party that he has
1  made statements contrary to his testimony merely tends to impeach his credibility, and is not substantive evidence against his co-defendant.

**Fraudulent conveyances.** A conveyance of property which already
2  belongs to the grantee will not be set aside at the suit of the grantor's creditors, though procured by threats of a criminal prosecution.

**Estoppel: evidence.** An estoppel which will preclude a grantee of
3  land from denying his liability for the satisfaction of the grantor's debts must be clearly established. Evidence held insufficient to show an estoppel.

**Secret trusts: estoppel.** A wife who permits the title to her prop-
4  erty to stand in her husband's name and to be held by him in secret trust for her benefit through a series of years, is estopped to claim title and ownership as against creditors of the husband who extended credit on the strength of his ownership.

*Appeal from Allamakee District Court.*— Hon. L. E. Fellows, Judge.

Saturday, December 15, 1906.

Rehearing Denied Monday, June 10, 1907.

Suit to subject real estate to the satisfaction of plaintiff's judgment. The petition was dismissed, and plaintiff appeals.—*Reversed.*

*Wm. S. Hart,* for appellant.

*Dayton & Dayton,* for appellees.

LADD, J.— Plaintiff recovered judgment against M.
W. Lang September 10, 1900, for $338.93, and costs, based
on three promissory notes — the first two dated March 21,
1893, for $185, and the last September 15th, of the same
year, for $37.   At that time Lang was the husband of his
co-defendant, now Mary E. Perkins, from whom she ob-
tained a decree of divorce December 19, 1894, and was
awarded the custody of their five minor children.   The day
previous he had conveyed to her one hundred and sixty-one
acres of land and a house and lot in Monona, the title to all
of which was in his name, and all personal property, save
his wearing apparel and $9 in pocket money.   Twenty acres
of the land was subsequently sold by her, and, in this action,
the plaintiff prays that the remainder be subjected to the
payment of its judgment.

I.   Appellant first contends that, as a part of the consid-
eration for the conveyances mentioned, Mrs. Perkins prom-
ised to pay the debts of her husband.   He denied that there
was such an agreement.   His admissions of
having made statements to the contrary
merely tended to impeach his credibility and did not con-
stitute substantive testimony against his codefendant.   No
other evidence was introduced and the court rightly held that
of Lang insufficient to sustain this allegation.

1. EVIDENCE:
admissions.

II.   Counsel next urges that the conveyances were as
alimony, and procured by threat of criminally prosecuting
the grantor.   There may have been such a threat but both
parties testified that the property belonged to
the wife, and, in conveying it to her, he
merely transferred to her the title to her own property.   As
this deprived him of no right, the deeds ought not to be set
aside owing to the pressure brought to bear on him to execute

2. FRAUDULENT
CONVEYANCES.

them. The matter of alimony was not mentioned in the decree nor is there any evidence that the property was conveyed to her as alimony. Undoubtedly the husband agreed not to defend against the divorce suit and this may have been in consideration of her agreement not to prosecute. Such an agreement is probably against public policy. *Sayles v. Sayles,* 21 N. H. 312 (53 Am. Dec. 208) ; *Baum v. Baum,* 109 Wis. 47 (85 N. W. 122, 53 L. R. A. 650, 83 Am. St. Rep. 854) ; *Openheimer v. Collins,* 115 Wis. 283 (91 N. W. 690, 60 L. R. A. 406) ; Bishop on Mar. & Div., section 239. But this was not in consideration of the conveyance of the land which, as said before, was transferred to Mrs. Perkins, as property, which already belonged to her.

III. The plaintiff also pleaded that Mrs. Perkins was estopped from denying the liability of the land to the satisfaction of its judgment. It appears that Lang was owing

3. ESTOPPEL: one Sutcliffe, and the latter, in negotiating for
   evidence.   the purchase of machinery, proposed that Lang
execute his notes to the company in payment. Its agent, T. J. Collins, went to Lang's home to ascertain his financial condition and whether the notes would be satisfactory to the company. He testified: " I then understood that Lang owned the farm. I went to Lang's house. . . . Lang was there, and I think his wife was there, but I am not sure. We had a conversation about the giving of the notes in the house at the time. . . . I would not have accepted these notes in payment for the machinery if Lang had not owned the farm or the other property." The notes were those given in March, 1893, on which the judgment was rendered. It will be noted that Collins does not claim that a word was said to or by or in the presence of Lang or his wife concerning the title or ownership of any property he or she owned. For all that appears, he might have acquired his information concerning this from an entirely different source as from Sutcliffe who accompanied him. The most that can be said is that Mrs. Perkins may have been advised of the giving of

these notes.    An estoppel must be clearly established before it can be of any avail, and, as Mrs. Perkins' presence was merely a matter of surmise, and there was no claim that she heard the conversation, the plea cannot be held to have been established by this evidence.

IV.    It is also contended that, as the property was allowed to stand in her husband's name in secret trust for her benefit, she cannot be heard to claim ownership as against those who extended credit to Lang in reliance 4. Secret trusts: estoppel. upon his ownership of the property.    The one hundred and forty-one acres of land in controversy belonged to John Brooks prior to 1875.    Before his death he conveyed the land to his brother George Brooks in trust for his only heir, Mrs. Perkins.    She married Lang in 1876 and, with her consent, George Brooks conveyed the property to her husband.    By mistake twenty acres was omitted from the deed.    Thereafter in 1883 Lang instituted a suit against his wife as the sole heir of Brooks, asserting therein the purchase of the twenty acres, and that it was omitted from the deed by mistake, and procured a decree of court appointing a commissioner who conveyed the land to him.    Just why this was done instead of merely taking a deed from Mrs. Lang does not appear.    Because of a defect in the title of eighty acres of the land, Lang entered it as a homestead before the United States Land Office and procured a patent thereof to himself in March, 1886.    Lang also secured a decree quieting title to another forty acres against one John Riser in 1883. Nevertheless they both testified that, during the entire period of their married life, they regarded this property as the wife's inheritance, and that it was understood between them that it was her property.    In 1887, she inherited $2,000 more, and this was paid over to her husband upon the understanding that he would transfer to her any property he purchased with it at any time she desired.    The twenty acres involved and also the residence in Monona seems to have been purchased in this way.    There is no controversy on this ques-

tion and the authorities cited by the appellee on the theory that this property was conveyed to Mrs. Perkins in satisfaction of an indebtedness due her from her husband are not in point, as it is without support in the record. See *Casey v. Casey,* 116 Iowa, 655; *Roberts v. Brothers,* 119 Iowa, 309; *Clark Bros. v. Ford,* 126 Iowa, 460.

On the contrary it fully appears that, for twenty years, the land, while belonging to Mrs. Perkins, was allowed to stand in her husband's name and to be held by him in secret trust for her benefit. He occupied the premises and treated them in all respects as his own, and the evidence is without dispute that credit was extended to him by plaintiff in reliance upon such ownership. It would be inequitable to permit his wife, after allowing him to obtain credit upon the apparent ownership of this property for so long a time to set up a claim thereto against the creditors who had trusted him in reliance upon such ownership. She must be presumed to have known that, in the ordinary course of business, he would be likely to obtain credit by reason of his ostensible ownership, and, having consented that the land stand in his name, she ought not to be heard to say, as against those extending credit in reliance on the security which she permitted him to hold out, for the purpose of defeating the collection of the indebtedness, that she, rather than he, owned the property. These principles are recognized in practically all the authorities. *Iseminger v. Criswell,* 98 Iowa, 382, and cases cited; *Laing v. Evans,* 64 Neb. 454 (90 N. W. 246), and cases cited.

For these reasons, we think the several tracts of land should have been subjected to the payment of plaintiff's judgment.—*Reversed.*