[APRIL TERM, 1923]

## SEAMAN v. BIG HORN CANAL ASSOCIATION
(No. 1020; Decided Apr. 2, 1923; 213 Pac. 938)

AGENCY—CORPORATIONS—LIABILITY OF CANAL CORPORATIONS FOR ACTS OF AGENTS—ESTOPPEL IN PAIS—DISCLAIMER.

1. A canal association incorporated to furnish water to its stockholders on a mutual plan and not for profit, is responsible for the wrongful acts of its officers or agents acting within the scope of their authority, to the same extent as other corporations.

2. Representations made by an officer of a canal company designated as its assistant secretary, but who was, in fact, permitted by such company to act as its chief executive officer in the management of its affairs and dealings with others, are binding upon the company.

3. A canal company delivering water to lands for irrigation, at a fixed charge which became a lien upon such lands until paid, having through its authorized agent, represented to one about to purchase lands served with water from

its canal, that the company had no claim or lien against
the land for water supplied during former years, which
representations were believed and acted upon by such
purchaser, is estopped from afterwards asserting a claim
against the land for water charges existing at the time
such representations were made.

APPEAL from the District Court, Big Horn County; HON.
P. W. METZ, Judge.

Action by Gilmore Hartigan against Big Horn Canal As-
sociation, a corporation, to enjoin an assessment for the
maintenance and repair of its canal for the year 1915.
There was a judgment for plaintiff and defendant appeals.
Upon the death of plaintiff John Seaman, his administrator,
was substituted as appellee.

*Brome & Hyde,* for appellant.

The question involved is the power of the assistant secre-
tary of the company to discharge a lien for an assessment
made upon plaintiff's land by reason of an erroneous state-
ment made to a prospective purchaser of the land. Defend-
ant is a *quasi* public corporation without capital, organized
on a mutual plan to supply water to its stockholders only,
and not for profit. Its only members are holders of land
lying under its canal, which lands are irrigated therefrom.
Its only purpose is to maintain the canal, control its opera-
tions and distribute water. The company is not liable for
acts or representations of its officers outside the scope of
their authority. Its assessments are levied in accordance
with Section 679 C. S. 1910. The office of assistant secretary
was created and his duties defined by the by-laws. The
land was subject to assessment for maintenance charges
and the assistant secretary was without power or authority,
to disclaim or relieve lands from such assessment. Neither
the company nor its officers were obliged to give information
to third persons, or non-members, with respect to its assess-
ments and erroneous information thus given could not dis-
charge existing liens for water charges more than a county

treasurer could, by erroneous information, discharge land from a tax lien. The treasurer might be liable but the county could enforce a lien for the unpaid taxes. (Lyman v. Edgerton, 29 Vt. 305.) The case cited involved the neglect of a clerk to index a mortgage, whereby a purchaser was misled, and made to believe, that no mortgage lien existed against land he was about to purchase. A private corporation cannot be held liable for a tort or wrong committed by one of its officers, outside the scope of duties devolved upon such officer or agent by the corporation. (Fletcher Cyc. Corp., Vol. 3, Ch. 42, Sec. 2071; Cook on Corporations, 7th Ed. Vol. 3, Sec. 717; Clark etc. on Corporations, Vol. 3, Sec. 704, p. 2150.) In this case the assistant secretary had no authority to give information to third persons, respecting the acts of the company, and thus bind the company even though liability might be incurred by the assistant secretary, individually.

The decree of the District Court should be reversed.

*H. W. Rich,* for respondent, filed no brief.

BLUME, Justice.

The action herein is one for an injunction brought in the District Court of Big Horn County, by G. Hartigan, as plaintiff, against the Big Horn Canal Association as defendant.

The defendant and appellant herein, is a corporation, organized in 1911 under the general incorporation laws of this state, for the purpose of owning and operating an irrigation system which supplies water, for irrigation, to land lying under its canal. The land is taken up and acquired under what is commonly known as the Carey Land Act, and the south one-half of Lot 69, T. 51 N. R. 93, in question here, is a part thereof. The corporation seems to have been organized by the various holders of the land lying under its canal; it has no capital stock, does not exist for direct gain, and is authorized to issue shares or certificates of membership, each representing a proportionate interest in the

irrigation works and in appropriations of water for the land. The by-laws of the corporation provide for an assistant secretary, as follows:

"The directors shall elect an assistant secretary who shall be employed at a monthly salary, who shall have charge of the office of the company, keep stock records, books of account, take charge of all office business, act as secretary at directors and stockholders meetings and keep full and accurate minutes of the same. Draw vouchers for treasurers signature, collect and receipt for assessments and moneys due and turn such moneys with an accurate account thereof over to the treasurer the first of each month or as often as $500 is on hand. He shall furnish detailed statements to the directors of the Company's financial condition, the first of each month and shall do all the duties usually done by the Secretary unless otherwise provided by these by-laws."

To carry out this by-law an assistant secretary was duly elected and acting during the time herein mentioned. Section 792 of the Wyo. Comp. Stat. 1920 gives authority to the corporation to levy and collect assessments for the maintenance of its irrigation system against the various shareholders, making them a lien on the lands for which the water is furnished, and authorizing the withholding of water until paid. Pursuant to this power the corporation on November 8, 1915, levied an assessment for the maintenance and repair of its canal for that year. $78.69 was the amount levied against the land in question here. This was not paid and the defendant, accordingly, in the spring of 1919, refused to deliver any water for the land of plaintiff.

Plaintiff's testimony tends to show the following additional facts: The land in question was owned in the month of September, 1916, by one Washburn. The plaintiff desired to buy it, entered into negotiation with Washburn, arrived at an understanding with him as to the price, and it was agreed between them that all delinquent taxes and assessments against the land should be deducted from the purchase price. Then, in order to become advised, plaintiff,

in September, 1916, called on the assistant secretary of said corporation, informed him of his intended purchase mentioned, and asked to be advised as to the status of the assessments made by the corporation against the land in question. In response, plaintiff was told in effect that the assessment against said land for the year 1915 had been paid. He then bought the land, did not, however, make final payment to Washburn until February, 1917, and before doing so, he again called on said assistant secretary to assure himself of the correctness of the information previously received, and being advised to the same effect as before, and relying thereon, he thereafter paid to Washburn the balance due on the purchase price, without deducting the amount of the assessment mentioned. There is some evidence in the record tending to show that the assistant secretary for a number of years prior to 1916 was the person, and the only one, to whom interested parties went, or could go, for the purpose of information in regard to assessments made by the said corporation against lands under its canal. The plaintiff claimed in his petition that the said corporation should, by reason of the statements and assurances of the assistant secretary made as above mentioned, be held to be estopped from asserting or enforcing the lien claimed by it against the land in question, and he asked that it be enjoined from shutting off the water from his land by reason of such claim. The defendant corporation denied the claim of plaintiff and adduced evidence in support thereof. The court found for plaintiff, held the defendant corporation estopped from claiming or enforcing said lien, enjoined it as asked for in the petition, and entered judgment accordingly. From this judgment defendant appeals. For the purposes of review in this court, accordingly, we must take the testimony tending to sustain the plaintiff's claim as true. The plaintiff Hartigan having died, John Seaman, administrator of his estate, has been substituted as appellee herein.

The position taken by counsel for defendant and appellant is to the effect that the appellant is a *quasi* public cor-

poration, not organized for any direct profit; that as such it cannot be held estopped on account of the representations made by its assistant secretary; that the giving of the information by him did not involve the performance of any duty; that said corporation is not organized for the purpose, and is not authorized or required, to give any information to third parties not interested in the corporation, as to the status of any liens or assessments against lands under its canal, and hence the giving of said information by said assistant secretary could not be and was not the act of the corporation itself.  Judging from some authorities cited, the claim is also apparently made that an assistant secretary is an officer of such limited authority as not to be able to bind a corporation.  We need, however, only say on that point that the name by which an officer is designated is not at all necessarily determinative of his authority.  In the case at bar the assistant secretary not alone kept the books of the company, collected and receipted for all assessments, but he had full charge and control of its office.  As stated by one witness, he was the ''all around boss;'' he apparently had all the powers of a general manager, and it is clear that if the defendant corporation could be estopped by misrepresentations of any of its officers, it clearly could be so through those of the assistant secretary here.

Counsel seems to lay stress on the fact that the appellant is a *quasi* public corporation, and hence exempt from the general rule.  It is true that ditch companies furnishing water for irrigation to the public generally have been designated as *quasi* public.  (40 Cyc. 825.)  On the other hand it has been stated that corporations, organized for a similar purpose as appellant, furnishing water only to its stockholders, cannot be deemed to be public service or *quasi* public corporations, at least not strictly speaking.  (Kinney on Irrig. & Water Rights (2nd Ed.), Sec. 1480; Barton v. Riverside Co., 155 Cal. 509, 101 Pac. 790, 23 L. R. A. N. S. 331.)  We need not, however, take the trouble of determining the precise character of appellant corporation.  It is at

least clear that it would have no higher rights than a municipal corporation engaged in furnishing water to its inhabitants. Counsel for appellant, indeed, claims that it has similar rights and cites as authority the case of Lyman v. Edgerton, 29 Vt. 305, where a town was held not liable for neglect of the clerk to index a mortgage and representing that there was no claim upon the property covered thereby. But the case is not in point; it is not controlling here if for no other reason than that the clerk in that case performed a governmental function. A municipality, however, that supplies the inhabitants with water does so in its proprietary or business capacity. (30 Am. & Eng. Ency. of Law, 404; Pond, on Public Utilities, Sec. 6; Bailey v. New York, 3 Hill 531; 38 Am. Dec. 669; Western Sav. Fund. v. Philadelphia, 31 Pa. St. 175, 72 Am. Dec. 730; State v. Barker, 116 Iowa. 96, 93 A. S. R. 222; City of Montgomery v. Greene, 180 Ala. 322, 60 So. 900; People v. Schlitz Brewing Co., 261 Ill. 22, 103 N. E. 555; Kohler v. Reitz, 46 Pa. Super. Ct. 350, 354; Brumm's Appeal, 22 W. N. C. 137, 12 Atl. 855.) It appears to be well settled that a municipality has two classes of powers, the one legislative and governmental, the other proprietary or business; and that as to the latter, while having the same powers, they are also subject to the same liabilities as private corporations or individuals. (Pond, supra, sections 6-9. See cases last cited. Wagner v. Rock Island, 146 Ill. 139, 34 N. E. 542, 21 L. R. A. N. S. 1013; Palestine v. Siler, 225 Ill. 630, 80 N. E. 345; Omaha Water Co. v. Omaha, 147 Fed. 1; Board v. City of Fort Collins, (Colo.) 189 Pac. 929.) Accordingly, it may be estopped in pais, at least in cases when it acts in its business capacity. (21 C. J. 1186, 1190, Sections 190, 193; City of Chicago v. Sexton, 115 Ill. 230; The George F. Blake Mfg. Co. v. the Sanitary Dist. of Chicago, 77 Ill. App. 287; Rankin v. New York, 145 App. Div. 838, 130 N. Y. S. 427; aff. 204 N. Y. 684, 98 N. E. 1114. See also Dillon on Munic. Corp., Sec. 435, note 2; Curnon v. New York, 79 N. Y. 511; O'Leary v. Board, 93 N. Y. 1; West Jersey Traction Co. v.

Camden, 52 N. J. Eq. 452, 476.). It follows, therefore, that appellant corporation must be considered in the case at bar the same as though it were a private corporation, unless the fact that it was not organized for profit would make it different. We think not. Mutual ditch companies, organizations similar to appellant corporation, have been held responsible for the non-performance of their duties. (Big Goose & Beaver Ditch Co. v. Morrow, 8 Wyo. 537; Rocky Ford etc. Co. v. Sampson, 5 Colo. App. 30, 36 Pac. 638; O'Connor v. Ditch Co., 17 Nev. 245, 30 Pac. 882.) And as corporations can act only through representatives, it would seem clear that such companies should be held responsible for the wrongful acts of their agents acting within the scope of their authority the same as other corporations.

It is well settled, and no principle rests on a more solid foundation than, that one who by his acts or representations intentionally or through culpable negligence induces another to believe certain facts to exist, and the latter, not knowing the facts, acts on such belief to his substantial prejudice, the former is, in equity, estopped to deny the existence of such fact. (Lee Blakemore Inc. v. Lewelling, 281 Fed. 952, 21 C. J. 1113; Pomeroy Eq. Juris. Sec. 802 *et seq.*) The situation must, of course, be such that there is at least a reasonable expectation, an element existing in the case at bar, that the acts or representations will be acted on. (Laing v. Evans, 64 Neb. 454, 90 N. W. 246.) The rule, to state it another way as applicable to the case at bar, is that one who by his renunciation or disclaimer of a right or title, has induced another to believe and act thereon, is estopped afterward to assert such right or title. (21 C. J. 1148.) A large portion of the business of today is done by corporations, and they are, and it is just that they should be, subjected to the rule. (Bigelow on Estoppel (6th Ed.), 496, 618, 619; 21 C. J. 1190; 10 R. C. L. 724; Metzger v. Southern Bank, 98 Miss. 108, 117, 54 So. 241.) And when the circumstances are such that an individual, if making a renunciation or a

disclaimer, would be estopped, it is clear, that when that is done by a corporation, acting through its agent who authoritatively represents it, the principle of estoppel should apply equally and to the same extent, at least in all transactions not *ultra vires*.

In the case at bar the acting secretary had full charge and control of the books, and was the only agent of the corporation, outside of its board of directors, who had authority to represent it in the collection of assessments, to give information as to the amounts thereof and as to whether they had been paid or not.   True, the corporation was not organized for the purpose of giving out information to every one who, whether interested or not, might ask for it.   But debts due banks or other corporations are frequently made through parties other than the original debtors.   Property is frequently transferred, mortgages and liens thereon are paid off by purchasers.   Daily, almost, inquiries are made of cashiers of banks and authorized representatives of other corporations as to the existence or amount of claims of the corporation against parties or property.   To hold that corporations under these circumstances are acting *ultra vires* and that they owe no duty whatever to inquirers, that the officers who know and who represent them in the collection of debts, may with perfect impunity, so far as the corporation is concerned, misrepresent, intentionally or negligently, the facts of which inquiry is made, would, at least, have the effect to check trade, industry and commercial relations, and would be contrary to those principles of equity jurisprudence which insist on fair dealing between man and man. We need not decide as to whether or not the acting secretary of defendant corporation had a right to refuse to answer the questions asked him by the plaintiff.   But he did answer, and when he did, he acted within the powers possessed by the corporation and it was his duty to speak the truth. (Ellsworth v. Campbell, 87 Ia. 532, 54 N. W. 477; The Ottumwa Belle, 78 Fed. 643.)   Had he, at the time in question, acted for and represented himself, it is clear that he would

have been held liable. (21 C. J. 1119; Haskins v. Hesley, 152 Ill. App. 141; Graves & Grass v. Leach, 192 Ala. 164, 68 So. 297; Chancellor v. Low & Evans, 148 Ala. 511.) A corporation, at least when acting in a transaction not *ultra vires,* owes a like duty under like circumstances, as an individual. But it can act only through agents, and the duty must, therefore, necessarily devolve on one or more individuals. That need not necessarily be the board of directors. A person representing it in a department or line of business, with general authority to transact the affairs thereof, must also be under a duty, on behalf of the corporation, to tell the truth in connection therewith. The acting secretary in the case at bar had full and complete power in the transaction in question; he and no one else represented or could represent the corporation at that time, and for his acts, accordingly, it must be held responsible. To hold otherwise would be practically equivalent to absolving it from the duty mentioned altogether. Corporations have frequently been held liable under circumstances similar to those presented in the case at bar. (Old Nat. Bank v. Exchange Nat. Bank, 50 Wash. 418, 97 Pac. 462; Rankin v. City of New York, supra; The Des Moines Loan & Trust Co. v. Des Moines National Bank, 97 Iowa 668; Oakland County Savings Bank v. State Bank, 113 Mich. 284; Cochecho Nat. Bank v. Haskell, 51 N. H. 116, 12 Am. Rep. 67; Kelly v. Fairmound Land Co., 97 Va. 227, 231; 33 S. E. 598; Jett v. Crittenden, 89 Ark. 349, 116 S. W. 665; Moore v. Bank of Commerce, 52 Mo. 377; National Bank v. Watsontown Bank, 105 U. S. 217; Winter-Loeb Grocery Co. v. Warehouse Co., 4 Ala. App. 431, 58 So. 807.)

The judgment of the lower court must accordingly be and the same is hereby affirmed.

*Affirmed.*

POTTER, Ch. J., and KIMBALL, J., concur.