HOLDING'S LITTLE AMERICA, a
Wyoming corporation, Appellant
(Petitioner),

v.

BOARD OF COUNTY COMMISSION-
ERS OF LARAMIE COUNTY,
Appellee (Respondent).

No. 85–62.

Supreme Court of Wyoming.

Dec. 19, 1985.

Alan B. Minier of Hirst & Applegate, Cheyenne, for appellant.

Bert T. Ahlstrom, Jr., Cheyenne, and Dean W. Borthwick of Borthwick & McCall, Cheyenne, for appellee; oral argument by Mr. Ahlstrom.

Before THOMAS, C.J., and ROSE,[*] ROONEY,[**] BROWN and CARDINE, JJ.

CARDINE, Justice.

This case is before us a second time. The first time it was before us, *Holding's Little America v. Board of County Commissioners of Laramie County*, Wyo., 670 P.2d 699 (1983), we held that the challenged administrative action of authorizing industrial development revenue bonds could not be adequately reviewed because the grounds upon which the agency acted were not clearly disclosed by the record before us. Since then, the Board of County Commissioners of Laramie County has confirmed its previous action of authorizing the bonds. Holding's Little America has again petitioned for review claiming that certain findings of the Board were not supported by substantial evidence, and that the Board's decision was arbitrary, capricious and an abuse of discretion. We set aside the Board's actions.

FACTS

The Board of County Commissioners of Laramie County (Board) authorized indus-

* Retired November 1, 1985.    ** Retired November 30, 1985.

trial development revenue (IDR) bonds for the construction by Roadside, Inc. of a hotel and restaurant complex near Cheyenne. The Board authorized the IDR bonds on October 19, 1982, after four different meetings at which they took various actions concerning the bonds. Specifically, the Board approved an inducement resolution on October 6, 1981; discussed amending the resolution on May 11, 1982; amended the resolution on September 28, 1982; and finally authorized the issuance of the bonds on October 19, 1982.

Holding's Little America, appellant, filed a petition seeking review of the Board's action authorizing these bonds. In *Holding's Little America v. Board of County Commissioners*, supra, we held that the Board was an agency as defined by § 16-3-101(b)(i), W.S.1977, of the Wyoming Administrative Procedure Act and that the issuance of IDR bonds was an action reviewable by this court. We concluded that the record in that case was "insufficient to permit adequate review of the action of the county commissioners in order to determine whether or not they acted arbitrarily, capriciously, or abused their discretion." *Holding's Little America*, supra, 670 P.2d at 705. Therefore, we remanded the case for further proceedings by the Board.

After the remand, the Board, in further proceedings on September 4, 1984, adopted a resolution "Confirming the Actions Taken, Determinations and Findings, Made by the Laramie County Commissioner[s] Prior to the County's Issuance of Its Industrial Development Bonds for the Roadside, Inc. Project."[1] Holding's then again filed a petition for review with the district court, claiming that findings of the Board, which were required to be made by statute, were not supported by substantial evidence and that the Board's decision was arbitrary, capricious, and an abuse of discretion. The district court certified the case to this court pursuant to Rule 12.09, W.R.A.P.[2]

---

**1.** The resolution provided:

"WHEREAS, the Board of County Commissioners of Laramie County, State of Wyoming held regularly scheduled public meetings on October 6, 1981, May 11, 1982 and September 28, 1982 in the Commissioners' Chambers; and

"WHEREAS, on the agenda at these three meetings was the item 'Laramie County, Wyoming Industrial Development Revenue Bonds —Roadside, Inc. Project which was considered in full by the Board, and the action[s] of the Board with respect are thereto recorded in the Board Minutes.'

"NOW, THEREFORE, BE IT RESOLVED BY THE GOVERNING BODY OF LARAMIE COUNTY, WYOMING.

"1. *Findings.* Based upon information furnished and representations made available to the County Commissioners at the public meetings held on October 6, 1981, May 11, 1982 and September 28, 1982, the County Commissioners made certain determinations and findings concerning the economic benefits to Laramie County which would result from financing a portion of the Roadside, Inc. Project with Industrial Development Bonds. Said determinations, findings, the procedures followed and the underlying facts for the Commissioners' actions as reflected in the Bond Resolution for the Series of Bonds described herein, and other matters involved in the meetings held on October 6, 1981, May 11, 1982 and September 28, 1982 are set forth in detail in the attached affidavits of Janet C.

Whitehead, Dean Fogg, Jack Humphrey, Shirley Frances, William D. Bagley, Marvin Gertsch and James Martin.

"2. *Confirmation.* That the determinations and findings made by the Laramie County Commissioners at the October 6, 1981, May 11, 1982 and September 28, 1982 meetings, as set forth in said Bond Resolution, which were based on the facts presented at said meetings, taken as a whole and as set forth in the affidavits attached hereto, concerning the Roadside, Inc. Project and the economic benefits to Laramie County as a result of financing a portion of Roadside, Inc. Project with Industrial Development Bonds and the security for the payment thereof, are hereby ratified and confirmed.

"3. *Prior Action.* That all action heretofore taken by the County Commissioners of Laramie County directed toward the issuance of Industrial Development Bonds for the Roadside, Inc. Project is hereby ratified and confirmed."

**2.** Rule 12.09, W.R.A.P., provides in part:

"The review shall be conducted by the court without a jury and shall be confined to the record as supplemented pursuant to Rule 12.-08, W.R.A.P., and to the issues raised before the agency. The court's review shall be limited to a determination of the matters specified in § 16-3-114(c).

"If after such review, the district court concludes the matter to be appropriate for deter-

Holding's states the issue now for review as:

> "Were the determinations and findings made by the Board of County Commissioners of Laramie County in confirming certain Industrial Development Revenue Bonds supported by the record?"

The Board contends there is sufficient evidence in the record for this court to affirm its actions. To support this contention, the Board relies on the minutes of its meetings in 1981, 1982 and 1984 at which the bonds were discussed; seven affidavits which assert that the Board was advised of the economic impact the project would have on the county; documents of the mechanics of the bond's issuance; and the fact that the final bond resolution authorized the issuance of only $1.2 million in bonds instead of $5 million as originally planned.

## JUDICIAL REVIEW

We have previously held that the Board's authorization of IDR bonds is an action which is subject to judicial review, "at least with respect to minimum compliance with requirements of statutes providing for the issuance of these bonds, within the Administrative Procedure Act's definition of 'other agency action.'" *Holding's Little America,* supra, 670 P.2d at 703. Section 15-1-705, W.S.1977, 1985 Cum.Supp., provides a number of requirements which must be met when issuing IDR bonds. It provides in part:

> "(a) Before leasing any project the governing body shall determine the:
>
> > "(i) Project furthers the public purpose of providing health care facilities in the state or meets the following public purposes:
> >
> > > "(A) Creating new or additional employment opportunities;
> > >
> > > "(B) Expanding the tax base and increasing sales, property or other tax revenues to the municipality or county;

mination by the Supreme Court, the district court may certify the case to the Supreme

> > > "(C) Maintaining and promoting a stable, balanced and diversified economy among agriculture, natural resource development, business, commerce and trade;
> > >
> > > "(D) Promoting or developing use of agricultural, manufactured, commercial or natural resource products within or without the state.

\*     \*     \*     \*     \*     \*

> "(b) No bonds shall be issued pursuant to the provisions of this article to acquire, construct or improve a project unless the governing body makes the determinations and findings required by W.S. 15-1-705(a)(i)."

Appellant claims that the Board failed to fully consider the factors listed in § 15-1-705(a)(i) and that the evidence before the Board cannot support its determination that the project met the public purposes delineated in that section. "A statute may specifically require that the agency consider particular factors." *Holding's Little America,* supra, 670 P.2d at 704.

Section 16-3-114(c)(ii)(A), W.S.1977 (October 1982 Replacement), provides that, when reviewing agency action, the reviewing court shall:

> "(ii) Hold unlawful and set aside agency action, findings and conclusions found to be:
>
> > "(A) Arbitrary, capricious, an abuse of discretion or otherwise not in accordance with law."

In determining whether the action of an agency is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law, we must ascertain whether the decision is supported by evidence contained in the record. *Holding's Little America,* supra, 670 P.2d at 703. It is an abuse of discretion for an administrative agency to act without collecting the necessary facts. *First National Bank of Thermopolis v. Bonham,* Wyo., 559 P.2d 42 (1977).

Court."

## REVIEW OF THE RECORD

When this case was first before us, we could not adequately review the action of the Board because the record was insufficient. We believed that there may have been meetings, presentations, and discussions with the applicants prior to the Board's original inducement resolution of October 6, 1981, although they did not appear in the record. Now the Board has attempted to supplement the record and confirm its prior action.

The Board's latest action is based upon very little evidence which was not already before this court in the first appeal. Although the Board held a meeting after our remand, at which the bonds were discussed, the only testimony from this meeting which appears in the record is from persons representing the appellant. This testimony does not in any way support the Board's action. Also included in the record for the first time are all of the documents relating to the mechanics of the bond issuance. None of these documents, however, are relevant to the question of whether there was evidence to support the Board's determinations required by § 15–1–705, W.S.1977, 1985 Cum.Supp.

The only evidence now in the record which was not previously before us is seven affidavits which attempt to establish what was presented to the Board when the bonds were authorized. In order to determine whether the Board abused its discretion in this case, we must examine these affidavits along with the evidence in the original appeal which supports the Board's action.

The resolution confirming the Board's previous authorization of these bonds is based primarily upon affidavits of the commissioners who were in office in 1981 and 1982, representatives of Roadside, Inc., the Laramie County attorney, and the Laramie County clerk. The affidavits of the commissioners and the clerk explain that the meetings of the Board are tape recorded only, and that the recordings of the meetings at which the bonds were discussed are unavailable because the tapes have been reused.

The affidavits of the commissioners and the representatives of Roadside attempt to "establish what factual representations were made and what information was considered" before the Board originally authorized the bonds.[3]

**3.** The affidavits in this case were the basis for the Board's action confirming its prior authorization of the bonds. These affidavits were incorporated by reference in the confirmation resolution and are properly before us under Rule 12.07, W.R.A.P., which, in relevant part, provides:

"The record in a contested case shall consist of the matter required by section 16–3–107(o), W.S.1977, of the Wyoming Administrative Procedure Act. To the extent that any matter so required was not preserved by the agency, and there is no record thereof, the court may take evidence of the matter. The record in all other cases shall consist of the appropriate agency documents reflecting the agency action and the basis thereof."

We stated previously that the action in question here was not part of a contested case. Therefore, the affidavits are properly a part of the record as documents reflecting the agency action and the basis thereof.

These affidavits are not "litigation affidavits" which are subject to criticism as "post hoc" rationalizations, and traditionally found to be an inadequate basis for review. See, e.g., *Citizens to Preserve Overton Park, Inc. v. Volpe,* 401 U.S. 402, 91 S.Ct. 814, 28 L.Ed.2d 136 (1971).

They could, however, be subject to the criticism that they are also no more than "post hoc" rationalizations and should therefore be viewed critically. There is no doubt that it would have been more prudent not to have destroyed the recordings of the meetings, even though we recognize that rerecording on the tapes is an attempt by the Board to save money. In any event, whether these affidavits are viewed critically makes no difference, in this case, because they in no manner provide the necessary support for all of the required determinations.

We make the above statements knowing that we have held that a hearing was not required in this case, but also that appellant is entitled to judicial review of the Board's actions under § 16–3–114, W.S.1977 (October 1982 Replacement). In order to provide effective review in determining whether there was minimal compliance with § 15–1–705, W.S.1977, 1985 Cum. Supp., there must be some evidence that the Board considered all of the statutory factors. *Holding's Little America,* supra, 670 P.2d at 705.

We also note that Rules 12.07 and 12.08, W.R. A.P., allow courts reviewing agency actions to take evidence, or additional evidence, in specific situations stated in those rules. This court has

They respond to our statement made in the original appeal that perhaps "there were meetings, presentations, discussions with the applicants" that did not appear in the record. In the original appeal, we noted that only conclusory statements were before us, and therefore we could not provide adequate review. "To afford the court an opportunity to informatively and intelligently discharge that function [of review] it must first be known what underlying evidentiary facts the agency relied upon * * *." *Pan American Petroleum Corp. v. Wyoming Oil and Gas Conservation Commission,* Wyo., 446 P.2d 550, 555 (1968). "The court must know * * * why" the agency acted as it did. *Geraud v. Schrader,* Wyo., 531 P.2d 872, 879 (1975).

The affidavits explain why the Board issued the bonds. But, although they explain why the Board acted, they do not provide the evidence needed to sustain the Board's actions. In *Holding's Little America,* supra, 670 P.2d at 706, we stated that " 'the orderly functioning of the process of review requires that the grounds upon which the administrative agency acted be clearly disclosed *and* adequately sustained.' " (Emphasis added.) Quoting *Securities and Exchange Com'n v. Chenery Corp.,* 318 U.S. 80, 63 S.Ct. 454, 462, 87 L.Ed. 626 (1943).

First we consider the affidavits of Roadside's representatives, James Martin and Marvin Gertsch. These two affidavits are nearly identical. The affiants state that they appeared before the Board at the 1981 and 1982 meetings in order to present information relating to the Roadside project, and that they "discussed the economic benefits of the proposed Project with the Board of County Commissioners." More specifically, the affiants told the Board

"that the truck stop complex and restaurant complex would employ approximately 40 people, thereby creating permanent employment opportunities for residents of the County * * *";

questioned the wisdom of a district judge assuming the responsibility of developing a record when reviewing contested cases. See *Board of*

"that the annual ad valorem taxes to be levied against the Project would be approximately $8,500.00"; and

"that based upon the 4% sales tax rate * * * the estimated annual sales tax collections from the Project would approximate $30,000."

In addition, Martin and Gertsch advised the Board that as a truck stop/restaurant the project would promote "the use of natural resource products" and "the use of agricultural products." Finally, the representatives "advised" the Board "that both the labor and construction materials and supplies would be obtained locally, thereby promoting business, commerce and trade within the local community * * *."

Affidavits of the commissioners serving at the time of the meetings in 1981 and 1982 also were used to support the confirmation resolution. These three affidavits are nearly identical. With regard to the consideration given the statutory factors, the affiants state:

"6. That the participants related to the Board of County Commissioners and the Commissioners found that:

"(a) the service station and restaurant complex would employ approximately 35–40 people and that a motel complex to be constructed with conventional financing would employ approximately 100 people; and

"(b) the estimated costs of the project and that the ad valorem taxes to be levied would be approximately $8,500.00; and

"(c) that the motel and restaurant Project would generate approximately $800,000 in sales per annum, and would result in an estimated annual sales tax of approximately $30,000."

Like the affidavits of Gertsch and Martin, the commissioners' affidavits state that the project would promote agricultural, manufactured, commercial and natural resource products. In addition, the commissioners' affidavits state that *Holding's* requested

*County Commissioners of Teton County v. Teton County Youth Services, Inc.,* Wyo., 652 P.2d 400 (1982).

that the bonds not be used "to finance a truck stop (an island with gas pumps), and said request was adopted by the Board * * *."

The remaining affidavits were from the Laramie County clerk and from the county attorney. The clerk stated nothing in her affidavit which related to the Board's consideration of the statutory factors. The county attorney states that he advised the Board that: " 'This is a legitimate purpose for which industrial revenue bonds are allowed under the statute and under the law.' " He also states in his affidavit that "the underlying facts supporting the statutory conclusions made by [the Board] were fully discussed in the meetings which considered the request of Roadside, Inc."

The only remaining evidence upon which the Board relies to support its position is the minutes from the meetings at which the bonds were discussed, and the fact that the final bond authorization was only for $1.2 million, as opposed to the $5 million originally planned. Although authorizing a lesser amount of bonds indicates that the Board did not act without considering Holding's opposition, we fail to see how it provides evidence that the Board considered the statutory factors discussed later. Nor do we believe that the minutes support the Board's actions.

The minutes of the Board meetings were before this court in the first appeal. We still maintain that the minutes fail to show that all of the statutory factors were considered. The minutes are brief summaries of the meetings and include statements such as: "Mr. Gertsch stated the issuance of such bonds would increase the financial activity of the county." "The Board stated * * * [t]he project was advantageous to the county as local jobs would be created." In other words, the minutes fail to disclose the *evidence* which was presented to support these statements and the Board's actions.

We note that a number of the statements in the affidavits and the minutes are no more than conclusory claims that the statutory requirements were met. We stated in

*Holding's Little America v. Board of County Commissioners,* supra, 670 P.2d at 705, that the Board "must do more than recite, in conclusory fashion, the requirements of the statute." This court has "expressed strong disapproval of so-called findings which [are] merely statements of the ultimate facts or conclusions of the administrative agency." *Shenefield v. Sheridan County School District No. 1,* Wyo., 544 P.2d 870, 872 (1976). If the record does not disclose a *factual* basis for the Board's findings that the project met the public purposes delineated in § 15–1– 705, W.S.1977, 1985 Cum.Supp., the action taken cannot stand.

## REQUIREMENTS OF THE STATUTE

■ Section 15–1–705, W.S.1977, 1985 Cum.Supp., requires the Board must have determined that the project met four general public purposes before it could authorize the bonds. Appellant contends that the record fails to support the Board's determinations that the project met the public purposes of:

"(C) Maintaining and promoting a stable, balanced and diversified economy among agriculture, natural resource development, business, commerce and trade."

We agree that there was not sufficient evidence presented to the Board so that it could have made the determination required by § 15–1–705(a)(i)(C).

The Board had before it evidence that the project would be built with local labor and local materials. It also was advised that the project would promote the use of various natural resource products. Such evidence is relevant to whether the public purposes stated in subsection (a)(i)(D) were met by the project. A project built with local materials certainly would promote the use of various products within the state. Promoting the use of various products, however, is quite different from "[m]aintaining and promoting a stable, balanced and diversified economy among agriculture, natural resource development, business, commerce and trade." The legislature obviously recognized such difference

when it enacted § 15–1–705 with subparagraphs (C) and (D), so that both of these public purposes must be met before IDR bonds can issue.

In order to determine that the project helps to maintain and promote "a stable, balanced and diversified economy" there must be evidence concerning the area's current economic base. Without such evidence, it is impossible to conclude that a project promotes diversity or stability. The record does not disclose that any evidence was presented to the Board relating to the area's economic sectors of agriculture or natural resource development. The record also reveals very little evidence relating to the remaining economic sectors.

The evidence that was presented relating to current business and trade does not support the determination that this project promoted or maintained diversity, stability or balance. The only evidence concerning the number of area restaurants was presented by the general manager of Holding's at the 1984 meeting. He informed the Board that numerous restaurants in the area had been forced to close because of lack of business in recent years. Likewise, his testimony indicated that there were enough motels in the area so that his motel's occupancy rate was below capacity.

In *Pan American Petroleum Corp. v. Wyoming Oil & Gas Conservation Commission*, supra, 446 P.2d 550, this court noted the necessity of taking expert testimony, in a highly technical field, even though such evidence might be somewhat speculative. In the present case, there was no testimony, expert or otherwise, which indicated that the project would promote economic balance and stability of the area. Although this testimony might be somewhat speculative, we believe that it, or some other evidence, was needed before the Board could properly make the determinations required by the statute. There was no expert or other testimony concerning the area's agricultural or natural resource development industries so that the Board could determine that the project would promote "balance" among different types of business. There was no evidence concerning the number, location, or kinds of restaurants or motels from which the Board could conclude that the project would promote or maintain diversification.

Section 15–1–705(b) states in part: "No bonds shall be issued pursuant to the provisions of this article to acquire, construct or improve a project unless the governing body makes the determinations and findings required by W.S. 15–1–705(a)(i)."

There is no evidence in the record from which the Board could have made the determinations and findings required by § 15–1–705(a)(i). Section 16–3–114(c)(ii)(A), W.S.1977, requires that we must hold unlawful and set aside agency actions which are an abuse of discretion. When the Board authorized the bonds, it did so without a scintilla of evidence supporting the finding required by § 15–1–705(a)(i)(C) and such action is an abuse of discretion. *Burlington Northern Railroad Co. v. Public Service Commission of Wyoming*, Wyo., 698 P.2d 1135 (1985).

We do not hold that this project could never qualify for IDR bonds under §§ 15–1–701 through 15–1–710, W.S.1977. We only hold that there was no evidence before the Board which was contained in this record on appeal from which it could make the determinations and findings required by § 15–1–705.

When this case was first before us, we stated that the grounds for the Board's actions must be clearly disclosed and adequately sustained. Although the Board has attempted to disclose the grounds upon which it acted, it has completely failed to "adequately sustain" the reasons for its actions.

We must set aside the Board's actions as an abuse of discretion.